**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | CRIMINAL NO. 3:19-174 |
| **TURHAN JESSAMY** | : | (JUDGE MANNION) |
| **Defendant** | : | |

## MEMORANDUM

Pending before the court is the defendant Turhan Jessamy's ("Jessamy") motion *in limine* to exclude or limit reference to his criminal convictions, (Doc. 27), and a motion for proposed venire video, (Doc. 29). For the reasons set forth below, the motion *in limine* will be **GRANTED in part** and **DENIED in part**, and the motion for proposed venire video will be **DENIED**.

**I.   BACKGROUND**

Jessamy is an inmate at the United States Penitentiary, Canaan, who is currently serving a federal sentence following his entry of a guilty plea to discharging a firearm in furtherance of a crime of violence—to wit, conspiracy to commit robbery, in violation of 18 U.S.C. §§924(c)(1)(a)(iii) and 924(c)(2). On June 4, 2019, he was indicted on one count of assault in violation of 18 U.S.C. §113(a)(3) (Count I), and one count of possession of contraband in

prison in violation of 18 U.S.C. §1791(a)(2). (Doc. 1). The charges stemmed from a July 25, 2018 incident where corrections officers observed Jessamy approach and strike another inmate in a slicing motion with an unidentified object in his hand. Afterward, correction officers discovered a shank in the area of the yard where the incident occurred. Jessamy admitted to assaulting the victim but denied doing so with a weapon.

On June 7, 2019, Jessamy entered a not guilty plea and, on January 13, 2020, he filed the present motions. The government filed its brief in opposition on February 24, 2020, (Doc. 35), and Jessamy filed a reply brief on March 3, 2020. (Doc. 36).

## II. DISCUSSION

### a. Motion *in Limine*

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). On a motion *in limine,* evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds." *Id.* Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995); *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d

149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions *in limine* prior to trial." *Ridolfi v. State Farm Mutual Auto. Ins. Co.*, 2017 WL 3198006, *2 (M.D.Pa. July 27, 2017). "Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id.*

"A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *United States v. Tartaglione*, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). "Further, a trial court's ruling on a motion *in limine* is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'" *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

Jessamy's motion is filed pursuant to, *inter alia*, Federal Rule of Evidence 609, which governs the admissibility of a witness's prior convictions for impeachment purposes. Pursuant to Rule 609(a), for purposes of attacking the character for truthfulness of a witness, evidence that the witness has been convicted of a felony "shall be admitted, subject to Rule 403 . . . if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed.R.Evid.

609(a)(1). In analyzing conviction evidence, the court must engage in a "genuine balancing" of probative value and prejudicial effect. *Tabron v. Grace*, 898 F.Supp. 293, 297 (M.D.Pa.1995). Important considerations include "the nature of the convictions, the time that has elapsed since conviction, the importance of credibility to the underlying claim, and the potential for prejudice from admitting the convictions." *Id.* at 295.

A conviction over ten years old (measured from the date of conviction or release from confinement for the conviction, whichever is later), is generally not admissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantial outweighs its prejudicial effect." Fed.R.Evid. 609(b). Thus, convictions over ten years old are only to be admitted in exceptional circumstances and the Rule 403 balancing is reversed. Whereas under Rule 403 unfair prejudice must substantially outweigh the evidence's probative value, for convictions over ten years old, the probative value of the conviction must substantially outweigh the prejudicial effect.

Jessamy is presently serving a federal sentence for his conviction under 18 U.S.C. §§924(c)(1)(A)(iii) and 924(c)(2), in relation to discharging a firearm in furtherance of a robbery. He was previously convicted of reckless endangerment in 2011, for which he completed his prison sentence in 2018.

Both of these convictions arose from the same incident, but the former charge was prosecuted in federal court and the latter was prosecuted in state court. Jessamy's criminal history additionally consists of convictions for obstruction of government administration and assault in the second degree in 2008, and criminal trespass, criminal mischief, and assault in the third degree in 2007.

The government has represented that it does not, at present, intend to introduce evidence of Jessamy's convictions from 2007 and 2008. Accordingly, the court will limit its analysis to only the two most recent convictions. In the event the government later provides notice that it intends to introduce the 2007 and 2008 convictions, the court will revisit the issue of their admissibility at that time.

With respect to his discharging a firearm conviction, Jessamy argues that, because it was based upon a statute that has since been held unconstitutional, it cannot be used for impeachment purposes. Jessamy cites *United States v. Davis*, 139 S.Ct. 2319 (2019), wherein the Supreme Court's held in that 18 U.S.C. §924(c)(3)(B), the residual clause of the Armed Career Criminal Act, was unconstitutionally vague and that conspiracy to commit Hobbs Act robbery was not a crime of violence. Jessamy argues that, because he was convicted under 18 U.S.C. §§924(c)(1)(A)(iii) and

§924(c)(2) "in relation to a crime of violence," and because, under *Davis*, conspiracy to commit Hobbs Act robbery is no longer a "crime of violence," his conviction may be vacated and thus should not be used for purposes of impeachment. Relatedly, he argues that the use of this offense, as well as his reckless endangerment conviction, are inappropriate for purposes of impeachment under Rule 609, since all relevant factors the court must consider weigh against admission.

"Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness. However, when the testifying witness is also the defendant in a criminal trial, the prior conviction is admitted only 'if the probative value of the evidence outweighs its prejudicial effect to that defendant.'" *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (quoting Fed.R.Evid. 609(a)(1)(B)). The Third Circuit has held that this Rule "reflects a heightened balancing test" with a "predisposition toward exclusion" and, that "[a]n exception [to exclusion of the evidence] is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present." *Id.* (internal quotation marks omitted). "When offering a prior conviction to impeach a testifying defendant, the government

bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B)." *Id.* at 289.

The Third Circuit has "recognized four factors that should be considered when weighing the probative value against the prejudicial effect under this heightened test." *Id.* at 286. The four factors are: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant." *Id.* (internal quotation marks omitted).

Initially, the court rejects Jessamy's argument that evidence of his discharging a firearm conviction should be excluded on the basis that there is a potential for it to be vacated. If "the pendency of an appeal does not preclude the use of a prior conviction for impeachment purposes," then certainly the fact that there is some possibility that an otherwise final conviction may overturned likewise does not constitute a basis to exclude it. *United States v. Kermidas*, 332 F.Supp. 1312, 1317 (M.D.Pa.1971); *see also* Fed.R.Evid.609(e) ("A conviction that satisfies this rule is admissible even if an appeal is pending."). In the event that this conviction is vacated prior to trial, Jessamy is certainly entitled to renew his objection.

With regard to whether Jessamy's convictions meet the *Bedford* factors, the court will address each in turn. As to the first factor, the kind of

crime, "courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." *Caldwell*, 760 F.3d at 286. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." *Id.* "With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried." *Id.*

Jessamy argues that his discharge of a firearm conviction should not be admitted because, like his present charges, it involves a crime of violence and use of a weapon, which may cause a jury to unfairly conclude that he has again engaged in the violent use of a weapon. Conversely, the government observes that Jessamy admitted to discharging a weapon in furtherance of a robbery and, because the underlying crime of robbery is "essentially theft coupled with force," it reflects directly upon Jessamy's honesty and integrity.

The court agrees with the government. "Crimes such as robbery and larceny have been found to reflect dishonesty on the part of the witness and are thus considered to be more probative of truthfulness [than other crimes]." *United States v. Smith*, No. 04-680, 2006 WL 618843, at *2 (E.D.Pa. Mar. 14, 2006); *see also United States v. Carey*, No. 3-CR-18-037, 2019 WL

6492566, at *3 (M.D.Pa. Dec. 3, 2019). Moreover, the court does not find that Jessamy's current charges of possession of a shank in prison and assault are the same as, or substantially similar to, discharging a weapon in furtherance of a robbery such that to admit evidence of the conviction would risk prejudicing the jury.

With respect to the reckless endangerment charge, Jessamy argues that, because it is related to the firearms offense, admitting it would unfairly prejudice him by giving the appearance that he had multiple convictions, instead of reflecting the fact that "he was merely punished twice for the same behavior—albeit by a different sovereign." (Doc. 28, at 6-7). In response, the government argues that this conviction should come in because it stemmed from the same dishonest conduct as the discharging a firearm offense. As to relatedness of the convictions, it argues that any risk of confusion can be eliminated by both counsel during direct and cross examination and a curative instruction by the court, if necessary.

The court finds that the first factor weighs against the admissibility of this offense. The mere fact that the conviction is related to another conviction that *does* bear on Jessamy's character for truthfulness, does not mean that this offense does as well. Further, the government has not provided any authority which would indicate that a reckless endangerment charge implies

dishonesty. *See Caldwell*, 760 F.3d at 286 ("Crimes of violence generally have lower probative value in weighing credibility.").

The second factor, the age of the prior convictions and/or the date of his release from confinement, weighs in favor of admissibility for both, since they occurred within the past ten years. Jessamy completed his sentence for the 2011 reckless endangerment conviction in 2018, and he is still presently serving his sentence for the discharging a firearm conviction.

The third factor "inquires into the importance of the defendant's testimony to his defense at trial." *Caldwell*, 760 F.3d at 287. "If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." *Id.* However, "[if] the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." *Id.* at 288.

Here, the court finds that this factor weighs against admissibility, since Jessamy's testimony will be important in refuting the government's strong documentary and physical evidence, which includes video of the incident, photographs of the victim's injuries, the weapon involved, and testimony of witnesses.

Finally, the fourth factor considers the significance of the defendant's credibility to the case. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Id.* at 288 . "Where a case is reduced to a swearing contest between witnesses, the probative value of conviction is increased." *Id.* Here, as the government observes, if Jessamy elects to testify at trial "the jury will be asked to choose between [his] version of events and the version provided by the government's witnesses." (Doc. 35, at 17). In light of the choice the jury will have to make regarding credibility, Jessamy's convictions are particularly relevant. *See Caldwell*, 760 F.3d at 288 ("[W]here a case is reduced to a swearing contest between witnesses, the probative value of a conviction is increased."). Therefore, the court finds that the fourth factor weighs in favor of admissibility for both convictions.

In reviewing these factors then, the court finds that the majority weigh in favor of admissibility for the discharging a firearm conviction, but against the admissibility of the reckless endangerment conviction. Thus, the government has met its burden of showing that the probative value of the discharging a firearm conviction outweighs its potential prejudicial effect under Rule 609(a)(1)(B), but it has not done so with the reckless endangerment conviction. The use of the former conviction by the government, however, will be limited to its cross-examination of Jessamy

and the risk of prejudice to Jessamy will be further mitigated by a limiting instruction directing the jury to consider it solely for purposes of impeachment.

Accordingly, in light of the foregoing, Jessamy's motion *in limine*, (Doc. 27), is **DENIED in part** with respect to the discharging a firearm conviction and **GRANTED in part** with respect to the reckless endangerment conviction.

### b. Motion for Proposed Venire Video

In this motion, Jessamy asks the court to show a particular jury instruction video to prospective jurors in this case. The "venire video" is an approximately eleven-minute-long video created by a committee of judges and attorneys within the United States District Court for the Western District of Washington for the purpose of "highlighting and combating the problems presented by unconscious bias." *Unconscious Bias Juror Video*, UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WASHINGTON, https://www.wawd.uscourts.gov/jury/unconscious-bias (last visited May 12, 2020).

Jessamy contends that this video is necessary because the juror orientation video used in the Middle District of Pennsylvania does not instruct potential jurors about "the role of unconscious bias." (Doc. 30, at 2). Jessamy asserts that "[s]tudies have generally shown that jurors tend to show bias

against defendants who belong to another race," and in light of the fact that both he and the victim in this case are African American, the video is necessary to combat this bias. Jessamy notes that other district courts outside the Western District of Washington have also elected to show this video at the defendant's request. *See United States v. Lawrence*, No. 1:18-cr-527 (E.D.N.Y. Nov. 6, 2019) (electing to show the video and noting that it has also been used in the Northern District of California).

      The government, by contrast, argues that the very purpose of *voir dire* is to get to the root of unacknowledged biases in prospective jurors. It asserts that, in light of the fact that Jessamy's race is irrelevant to this case, it is "presumptuous to insist on a video that lectures jurors to remember not to be discriminatory." (Doc. 35, at 8). The government argues that the entire jury trial system is designed to account for unconscious bias via instructions that demand impartiality and by drawing on the collective decision-making ability of twelve members of the community with a variety of backgrounds, beliefs, and personalities. Moreover, the government contends that warning jurors about potential bias is already sufficiently covered in the Third Circuit's model instructions, which explicitly direct jurors not to consider any person's race, color, religion, or national ancestry, nor to allow themselves to be influenced by sympathy, prejudice, fear, or public opinion. With respect to the video

itself, the government argues that it is problematic in that it "points to everyday human behavior, labels its biased with the emotional implications of bigotry, and then provides no reliable solution for any juror to feel confident in [his or her] ability to fairly judge the facts of a case or the credibility of a witness." (Doc. 35, at 12).

The court agrees with the government that the proposed venire video is inappropriate in this case. While there is undoubtedly value in making jurors aware of unconscious bias, to do so through the proposed video seems more likely to cause jurors to focus heavily on a single aspect of their duty as jurors at the expense of others that are equally as important. This is particularly so here where, as Jessamy himself acknowledges, "[r]ace is not likely to be a central concept in [his] case." (Doc. 30, at 3). The court notes, however, that the Western District of Washington's website also provides model jury instructions on implicit bias.[1] The court may elect to include some of these instructions in its final jury charge, since providing this type of instruction amongst the others during the recitation of the final charge would not raise the same concerns about unduly emphasizing one instruction over the others, as does the video.

---

[1] https://www.wawd.uscourts.gov/sites/wawd/files/CriminalJuryInstructions-ImplicitBias.pdf.

Finally, as with all jury trials before this court, both parties will have the opportunity to provide the court with proposed *voir dire* questions, and to pose questions to potential jurors during *voir dire*. During this questioning, defense counsel is entitled to focus some of those questions on unconscious bias, if he deems it necessary, and to use cause or preemptory challenges in response to any bias that emerges through the *voir dire* questioning.

Accordingly, Jessamy's motion for proposed venire video is **DENIED**.

### III.  CONCLUSION

For the reasons set forth above, Jessamy's motion *in limine*, (Doc. 27), is **GRANTED in part** and **DENIED in part**, and his motion for proposed venire video, (Doc. 29), is **DENIED**. An appropriate order will issue.

s/*Malachy E. Mannion*

**MALACHY E. MANNION   United States District Judge**

**DATE: June 1, 2020**
19-174-01